# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH BULKIN,<br><br>        Plaintiff,<br><br>  v.<br><br>V. OCHOA, et al.,<br><br>        Defendants. | Case No. 1:13-cv-00388 DAD DLB PC<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br>[ECF No. 28]<br><br>THIRTY-DAY OBJECTION DEADLINE |

Plaintiff Keith Bulkin ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on March 18, 2013. This case is proceeding on Plaintiff's First Amended Complaint against Defendants Ochoa, Mares, and Alvarez on a conditions of confinement claim in violation of the Eighth Amendment.

Defendants Mares and Alvarez filed the instant motion for summary judgment for failure to exhaust on July 2, 2015. Plaintiff filed his opposition on August 31, 2015, and Defendants filed a reply on September 3, 2015. The motion is ready for decision pursuant to Local Rule 230(l).

**A.  SUMMARY OF THIRD AMENDED COMPLAINT**

Plaintiff is incarcerated at Corcoran Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events giving rise to this action occurred. Plaintiff names correctional officers V. Ochoa (driver), E. Mares (navigator), and M. Alvarez (supervisor on duty) as Defendants in this action.

1

Plaintiff alleges the following. On February 24, 2011, Plaintiff was scheduled for a court appearance at the Corcoran Division of the Kings County Superior Court. Plaintiff was taken from his cell and escorted to a transportation van. He was dressed for court and escorted in handcuffs locked to a chain around his waist. Prior to being placed in the rear of the van, his legs were shackled around each ankle and tethered to a length of chain approximately eight inches in length. He was then placed in the rear cargo area of the van.

The cargo area of the van has two benches on the sides over the wheel well that face each other. Each bench has three seatbelts which are fixed into place and normally operable. When Plaintiff was placed in the rear of the van, the door was immediately shut, which is not normal procedure. Customarily, the transportation officer would have Plaintiff sit down, then would secure a seat belt on Plaintiff prior to closing the door and commencing transportation. Plaintiff then noticed that all of the seat belts had been rendered inoperable in that all of the buckles had been removed. On Plaintiff's previous transportation to court on February 2, 2011, all of the buckles were present. Plaintiff asked Defendant Ochoa if he could place a seatbelt on him prior to departure. Ochoa informed him: "You don't get one anymore." He then closed the door.

Defendant Ochoa then drove the vehicle to the Facility 3A Yard Administrative Segregation ("Ad Seg") by way of the perimeter fence and gates in between facilities. When they arrived at Ad Seg, another inmate, John Doe #1, was loaded into the vehicle and placed in one of the two front seats behind the driver in a secure, closed area. After Doe #1 was told where to sit, Ochoa advised him he needed to wear a seat belt. Ochoa then fastened the seat belt around Doe #1. Ochoa struggled putting the seat belt on and then apologized to the inmate, stating, "Sorry dude, it's the law." At that point, Plaintiff spoke up and asked Ochoa, "Well, in that case, what about me, Ochoa?" Ochoa responded saying "No, Bulkin, you lost that privilege." Ochoa then finished fastening the belt and closed the door.

Prior to leaving the facility, all transport vehicles must stop at the sally port and be inspected. During the inspection, Plaintiff stated there were no seat belt buckles available and he couldn't get a seat belt in the back of the van. Plaintiff requested to be moved to the front where there were seat belts. Defendant Ochoa responded, "You don't got shit coming, white boy. You wanna fuck around

and steal shit on my watch? You're gonna see what happens." It was then that the officers asked Plaintiff his name and CDC number. Before he could respond, Ochoa slammed the door and walked away from the vehicle.

The route to the courthouse from the prison is approximately ten minutes. During this drive, Defendant Ochoa drove exceedingly fast and recklessly. He was navigating corners quickly and abruptly. Defendant would press the accelerator so hard the tires would chirp. He would stop the vehicle abruptly at lights and stop signs. Ochoa further drove into pot holes purposely which in turn made the van lurch violently. Ochoa would laugh while watching and pointing back at Plaintiff. Mares was watching Plaintiff through his mirror. Plaintiff began to fear for his life and safety. There was nothing for Plaintiff to hold onto in the back.

As the van arrived at the courthouse, Plaintiff asked John Doe #2 if he thought Ochoa's driving was erratic, to which he responded, "Hell yeah! Do they always drive like that?" Plaintiff said no and that he was going to be sure to get a seat belt. While they had been driving, Plaintiff had heard clunking and clinking sounds coming from a crate. When Ochoa came back to the van to lock away weapons, Plaintiff noticed the crate contained all of the missing seatbelt buckles from the vehicle. Plaintiff asked Ochoa why he was driving the way he did. Ochoa responded, "Driving like what?" Plaintiff said, "You know, driving like . . . all crazy like a . . . ." Ochoa finished his statement: "Like a bat out of hell?" Plaintiff said, "Yeah exactly. You know I have no seat belts on back here." In response, Ochoa said, "Awww, the big bad white boy is scared of a little speed?" He then laughed with Defendant Mares and gave Mares a high-five. Plaintiff lost his temper and traded vulgarities with Ochoa. Plaintiff's last words were: "Fuck how you feel about me or what I have done. It is the law."

When Plaintiff's case was called, Plaintiff approached Defendant Sergeant Alvarez and asked for a seatbelt. Ochoa, in a shrill condescending voice, told Alvarez, "Yeah Sarge, Bulkin doesn't like my driving and wants a seat belt. Ochoa then started laughing along with Mares and Alvarez.

Plaintiff was placed back in the van with no seat belts. John Doe #2 was returned from court and was again seat belted by Ochoa. Plaintiff and John Doe #2 engaged in conversation whereupon John Doe #2 asked Plaintiff why the officers were so hostile to him and wouldn't provide him with a

3

1  seatbelt.  Ochoa then came back to retrieve his gun.  Plaintiff again asked Ochoa for a seat belt since
2  they were sitting in the nearby crate, or if he could be moved to a chair on the front where there were
3  seat belts.   Ochoa replied, "Why Bulkin? Are you scared? Good, you should be, that will teach you
4  a lesson.  It's just a short drive back to the prison."  Ochoa then shut the door and walked away.

5       During the drive back, Ochoa drove recklessly, slamming the brakes, driving into potholes,
6  and accelerating quickly.  Plaintiff alleges Ochoa drove through red lights to catch the other vans
7  because he had fallen behind due to watching Plaintiff slip and slide in the rear of the van.
8  Defendant Ochoa laughed and smiled while Plaintiff would slide about.

9       Defendant Ochoa then drove the van back to Ad-Seg where they dropped off John Doe #2.
10  After dropping off John Doe #2, Defendant drove the van along the perimeter fence road.  There
11  were many ruts which caused the road to be bumpy.  At one point the van suddenly lurched upwards
12  and Plaintiff was thrown into the air and backwards and/or sideways about six feet.  Plaintiff hit the
13  floor hard and momentarily lost consciousness.  Plaintiff's head was pounding and he felt sharp
14  pains in his neck and back.  He could not move or feel his legs.  His body began to seize up and it
15  hurt to move.  Plaintiff feared something was broken and screamed for help.

16       The van stopped and Ochoa came and opened the door and started laughing at Plaintiff.  He
17  asked what was wrong.  Plaintiff stated he was badly hurt.  Ochoa laughed at him and said he should
18  have been wearing a seat belt.  Plaintiff stated he couldn't feel his legs whereupon he was taken to
19  the hospital on prison grounds.

20       At the hospital, Plaintiff was evaluated.  It was determined that his neck and back were
21  sprained and he had suffered a concussion.  X-rays were inconclusive but no bones were broken.
22  Plaintiff also suffered from incontinence as a result of the injuries to his back.  To this day Plaintiff
23  experiences numbness and weakness in his right arm and right leg with progressive burning pain.
24  Two MRIs were performed which revealed a bulging disc in his back.

25       Plaintiff filed a 602 inmate grievance.  Weeks later he was told by another officer that Ochoa
26  had denied Plaintiff a seat belt because Plaintiff had previously been found in possession of a seat
27  belt, which made Ochoa look bad to his peers.  In addition, Ochoa was embarrassed by the
28  confrontation between them at the courthouse in front of Ochoa's sergeant.  Ochoa was also

frustrated with Plaintiff's favorable outcome in his criminal matter. Ochoa was reportedly trying to teach Plaintiff a lesson. Plaintiff alleges that Mares and Alvarez were complicit in Ochoa's actions.

Plaintiff sustained serious injuries to his lower back, sciatic nerve, spine, neck and head. Plaintiff now suffers from long term complications of permanent chronic back pain, neck pain, mobility impairments and irreversible weakness.

**B.     LEGAL STANDARD**

The failure to exhaust is subject to a motion for summary judgment in which the court may look beyond the pleadings. Albino v. Baca, 747 F.3d 1162, 1170 (9th Cir. 2014). If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice. Jones v. Bock, 549 U.S. 199, 223-24 (2007); Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

Defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If Defendants carry this burden, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)). "If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Albino, 747 F.3d at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**C.     UNDISPUTED FACTS**

Plaintiff submitted one appeal regarding the incident. It was received at the Corcoran appeals office on April 11, 2011 and assigned Log No. CSPC-11-00848. Pacillas Decl. ¶¶ 8-9, Ex. B. The appeal was classified as a staff complaint and bypassed to the Second Level of Review where it was partially granted on May 16, 2011. Id. Thereafter, the appeal was denied at the Third

Level of Review on November 1, 2011. Id. There is no mention of Defendant Mares or Alvarez in the initial 602 complaint. Id.

**D. DISCUSSION**

    1.    Appeals Process

Plaintiff is a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), and CDCR has an administrative remedy process for inmate grievances. Cal. Code Regs., tit. 15, § 3084.1 (2014). Compliance with section 1997e(a) is mandatory and state prisoners are required to exhaust CDCR's administrative remedy process prior to filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); Sapp v. Kimbrell, 623 F.3d 813, 818 (9th Cir. 2010). The administrative remedy process is initiated by submitting a CDCR Form 602 "Inmate/Parolee Appeal" within thirty calendar days (1) of the event or decision being appealed, (2) upon first having knowledge of the action or decision being appealed, or (3) upon receiving an unsatisfactory departmental response to an appeal filed. Tit. 15, §§ 3084.2(a), 3084.8(b)(1) (quotation marks omitted). The appeal must "describe the specific issue under appeal and the relief requested," and the inmate "shall list all staff member(s) involved and shall describe their involvement in the issue." Tit. 15, § 3084.2(a). Furthermore, the inmate "shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal Form, and if needed, the Inmate Parolee/Appeal Form Attachment." Tit. 15, § 3084.2(a)(4).

    2.    Analysis

It is uncontested that Appeal No. CSPC-11-848 is the only appeal submitted concerning the events on February 24, 2011. The appeal provided as follows:

> On 2-24-11 I was injured while in transport from court. Specifically after court had concluded & while on prison grounds transport officer Ochoa (here after "Ochoa") drove in a manner which was wreckless [sic] & a blatent [sic] disregard for my safety in the transport van. Ochoa, et al., further displayed deliberate indifference by not ensuring I had a safety belt available & that I was strapped in, combined with his wreckless [sic] driving this resulted in my being thrown from my seat across the back of the van & onto the floor while in full restraints, (i.e. leg restraints & cuffed to a belly chain) & unable to protect myself or brace the impact. The full extent of my injuries has yet to be determined, however, I've thus been diagnosed with a concussion, sprained neck & back. Officers thought it was a joke until the Sgt. on duty at ACH viewed the video & ensured them it was real. Since I've had neck & back pain with limited mobility, severe headaches with dizziness, nausea, weakness

> in my extremities & confussion [sic], as well as severe neck pain. Ochoa, et al., actions were deliberately indifferent to my "personal safety." I say this because the other inmate was provided at great length safety belts. The failure to place safety belts on me, an action I am incapable of doing while in restraints, & while one is not available, was a known & obvious disregard for my safety. Ochoa, et al., knew that without the use of a safety belt, should there be an accident I would be seriously hurt, which in fact is what happened.  All departmental staff have a duty to ensure my safety & to follow state seat belt laws & Ochoa et al., not only forsook that duty, but deliberately engaged in actions that made it certain an injury would take place.

Pacillas Decl., Ex. B.

The appeal was bypassed to the Second Level where it was partially granted in that a review was conducted. The appeal was denied in all other respects.  Plaintiff then appealed to the Third Level of Review. At that time, Plaintiff added a new claim and party. Plaintiff complained that "Sgt. Alvarez failed in his duties to instruct and train officers V. Ochoa and E. Mares." Id.

At the Third Level of Review, Plaintiff's argument was summarized as follows:

> It is the appellant's position that Correctional Officer (CO) Ochoa was "reckless" and displayed a blatant disregard for his safety during a transport. The appellant claims that on February 24, 2011, while being transported in a vehicle, CO Ochoa failed to secure the safety belt which caused him to be thrown from his seat and onto the floor while in full restraints.  The appellant stated that the incident was a result of CO Ochoa driving in a "reckless" manner.  The appellant also alleges that as a result of the incident, he has been diagnosed with a concussion, a sprained neck and back. Additionally, the appellant claims he suffers from dizziness, limited mobility, severe headaches, nausea, weakness in his extremities and confusion. The appellant requests (1) the video footage from the transportation van of the alleged incident and (2) the current seat belt policy along with the CDCR Form 837, Crime/Incident Report (Parts A, B, & C).

Voong Decl., Ex. B.

Defendants Mares and Alvarez argue that Plaintiff failed to exhaust their remedies as to them because Plaintiff did not specifically name them or describe their actions in his 602 grievance. Plaintiff counters that his use of "et al." after Ochoa, as well as his use of the plural in referring to "Officers" was sufficient to place CDCR on constructive notice of his complaints.

Proper procedural and substantive exhaustion of administrative remedies is required, which demands compliance with an agency's deadlines and other critical procedural rules. Woodford, 548 U.S. at 90; Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014).  Prisoners are required to "use all the steps the prison holds out, enabling the prison to reach the merits of the issue," Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford, 548 U.S. at 90).

7

Relevant here, the applicable prison regulations provide that inmates must list all involved staff members and describe their involvement; and inmates shall state all facts known regarding the issue being appealed. Tit. 15, § 3084.2(a)(3), (4). In addition, the regulations provide that "[a]dministrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602 (Rev. 08/09), Inmate/Parolee Appeal. . . ." Tit. 15, § 3084.1(b).

The Ninth Circuit previously adopted the Strong standard as "the standard of factual specificity required when a prison's grievance procedures do not specify the requisite level of detail," Griffin, 557 F.3d at 1120 (adopting standard articulated in Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)), and it applied that standard to California's state prison regulations in 2009, holding that an appeal "suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." Sapp, 623 F.3d at 824 (citing Griffin, 557 F.3d at 1120) (internal quotation marks omitted). However, California's prison regulations were amended in December 2010 and Sapp involved the previous, now-superseded regulations, Sapp, 623 F.3d at 819 (2002 inmate appeals), as did subsequent Ninth Circuit cases applying the Strong standard to California's regulations, Wilkerson v. Wheeler, 772 F.3d 834 (9th Cir. 2014); Akhtar v. Mesa, 698 F.3d 1202 (9th Cir. 2012); McCollum v. California Dep't of Corrs. & Rehab., 647 F.3d 870 (9th Cir. 2011); see Parks v. Chappell, 2015 WL 3466280, at *3 (N.D. Cal. 2015) (recognizing that Strong standard cases are distinguishable because they address the prior regulations). At that time, the regulations required only a description of the problem and the action requested. Plaintiff's appeal may have sufficed to exhaust the claims at issue in this action under that version of the regulations, but his appeal was submitted in April of 2011 and it is subject to the current regulations.

The exhaustion requirement was enacted "to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002); Cano v. Taylor, 739 F.3d 1214, 1219 (9th Cir. 2014); McKinney v. Carey, 311 F.3d 1198, 1200-1201 (9th Cir. 2002) (per curiam). Thus, "[t]he primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."

<u>Griffin</u>, 557 F.3d at 1120; <u>see also</u> <u>Jones</u>, 549 U.S. at 219 (promotion of early notice to those who might later be sued not thought to be one of the leading purposes of exhaustion requirement) (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004)).  However, as recognized by both the Supreme Court and the Ninth Circuit, "[t]he scope of [procedural and substantive exhaustion] depends on the scope of administrative remedies that the state provides," <u>Wilkerson</u>, 772 F.3d at 839 (citing <u>Jones</u>, 549 U.S. at 218), and the inquiry is now guided by more specific regulations than those at issue in <u>Sapp</u> and the cases that followed.

      a)    *Addition of New Issues*

The Court finds that Plaintiff's appeal failed to comply with current prison regulations in two respects.  First, Plaintiff added new issues after he submitted the appeal.  The appeal as originally submitted concerned the alleged deliberate indifference to Plaintiff's safety by Defendant Ochoa for his actions in failing to secure him with a safety belt and then driving in a reckless manner.  The appeal provided no notice of Plaintiff's claim that Sergeant Alvarez had failed to train and instruct Defendants Mares and Ochoa.  Plaintiff did not raise this claim against Alvarez until he appealed to the Third Level, which is in direct contravention of the regulations.  Tit. 15, § 3084.1(b).

      b)    *Identification of All Involved Staff Members*

Second, Plaintiff only identified Defendant Ochoa as the individual responsible for deliberate indifference to his safety.  Plaintiff failed to comply with the requirement that he specifically name the involved staff who are now parties to this suit.

Plaintiff's contention that his use of "et al." and the plural "officers" put the prison on constructive notice that he intended to bring claims against other parties is meritless.  Section 3084.2(a)(3) requires more than the use of "et al." or the plural "officers."  3084.2(a)(3) requires that Plaintiff shall "list all staff member(s) involved and shall describe their involvement in the issue [in the CDCR 602 form] . . . If the inmate does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." 15 C.C.R. § 3084.2(a)(3).  In this case, Plaintiff failed to name Defendants Mares and Alvarez or make a reasonable attempt to identify them in his 602 grievance.  Nor did Plaintiff describe any of their

alleged actions or omissions. Plaintiff's argument that constructive notice is sufficient for exhaustion purposes has been considered and rejected by courts in this Circuit. See, e.g., Randolph v. Nix, 2015 WL 5432622, at *4 (E.D. Cal. 2015); Valencia v. Gipson, 2015 WL 2185220, *10 (E.D. Cal. 2015); Parks v. Chappell, 2015 WL 3466280, at *4 (N.D. Cal. 2015); Hash v. Lee, 2014 WL 2986486, *13-14 (N.D. Cal. 2014). Accordingly, the Court finds that Defendants Mares and Alvarez have carried their burden in demonstrating that Plaintiff failed to exhaust his administrative remedies as to his claims against them.

Once Defendants have met their initial burden, the burden shifts to Plaintiff to come forward with evidence showing that something in his particular case made the existing administrative remedies effectively unavailable to him. See Albino, 747 F.3d at 1172. Plaintiff has made no such showing. In his opposition to the motion for summary judgment, Plaintiff argues that he used the term "et al." in his initial complaint with the intention of filling out the names of the proper parties once they were later identified. This is insufficient. As discussed above, the regulations require Plaintiff to make at least some reasonable attempt at identifying the proper parties. Here, Plaintiff failed to make any attempt to identify Defendants Mares and Alvarez, and he failed to describe any conduct by Mares and Alvarez that allegedly violated his rights. Thus, Plaintiff has not met his burden to show that administrative remedies were effectively unavailable.

### E. RECOMMENDATION

The Court therefore RECOMMENDS that Defendants' motion for summary judgment be GRANTED and the claims against Defendants Mares and Alvarez be DISMISSED without prejudice for failure to exhaust.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.1991).

IT IS SO ORDERED.

    Dated: **February 24, 2016**        /s/ *Dennis L. Beck*
                                                    UNITED STATES MAGISTRATE JUDGE