UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH BULKIN,<br><br>            Plaintiff,<br><br>    v.<br><br>V. OCHOA, et al.,<br><br>            Defendants. | 1:13-cv-00388-DAD-EPG (PC)<br><br>FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(ECF NO. 47)<br><br>OBJECTIONS, IF ANY, DUE WITHIN TWENTY (20) DAYS |

Keith Bulkin ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

Plaintiff filed this action on March 18, 2013. (ECF No. 1). This case is proceeding on Plaintiff's First Amended Complaint against Defendants Ochoa, Mares, and Alvarez regarding violations of the Eighth Amendment. Plaintiff's complaint stems from injuries he suffered when he was being transported back from the courthouse after Defendants refused Plaintiff a seatbelt.

On April 21, 2016, Defendants filed a motion for summary judgment. (ECF No. 47). Defendants claim that Plaintiff has failed to put forth sufficient evidence that Defendant Ochoa, who was driving the van at the time, was driving recklessly at the moment when Plaintiff was injured. Defendants argue as a matter of law that without such proof, Defendants' conduct would constitute mere negligence, rather than deliberate indifference, under the law.

For the reasons described below, this Court finds disputed questions of fact regarding whether Defendants acted with deliberate indifference in refusing to provide Plaintiff a seatbelt, and thus recommends denying Defendants' motion.

## I. SUMMARY OF FIRST AMENDED COMPLAINT

Plaintiff is incarcerated at the California Substance Abuse Treatment Facility ("CSATF") in Corcoran, California, where the events giving rise to this action occurred. Plaintiff names correctional officers V. Ochoa (driver), E. Mares (navigator), and M. Alvarez (supervisor on duty) as defendants in this action.

Plaintiff alleges the following. On February 24, 2011, Plaintiff was scheduled for a court appearance at the Corcoran Division of the Kings County Superior Court. Plaintiff was taken from his cell and escorted to a transportation van. He was dressed for court and escorted in handcuffs locked to a chain around his waist. Prior to being placed in the rear of the van, his legs were shackled around each ankle and tethered to a length of chain approximately eight inches in length. He was then placed in the rear cargo area of the van.

The cargo area of the van has two benches on the sides over the wheel well that face each other. Each bench has three seatbelts that are fixed into place and normally operable. When Plaintiff was placed in the rear of the van, the door was immediately shut, which is not normal procedure. Customarily, the transportation officer would have Plaintiff sit down, then would secure a seat belt on Plaintiff prior to closing the door and commencing transportation. Plaintiff then noticed that the seat belts on his bench had been rendered inoperable in that all of the buckles had been removed. Plaintiff asked Defendant Ochoa if he could place a seatbelt on him prior to departure. Ochoa informed him: "You don't get one anymore." He then closed the door.

Ochoa then drove the vehicle to the Facility 3A Yard Administrative Segregation ("Ad Seg") by way of the perimeter fence and gates in between facilities. When they arrived at Ad Seg, another inmate, John Doe #2, was loaded into the vehicle and placed in one of the two front seats behind the driver in a secure, closed area. After John Doe #2 was told where to sit, Ochoa advised him he needed to wear a seat belt. Ochoa then fastened the seat belt around

John Doe #2. Ochoa struggled putting the seat belt on and then apologized to the inmate, stating, "sorry dude, it's the law." At that point, Plaintiff spoke up and asked Ochoa, "well, in that case, what about me Ochoa?" Ochoa responded "no, Bulkin, you lost that privilege." Ochoa then finished fastening the belt and closed the door.

Prior to leaving the facility, all transport vehicles must stop at the sally port and be inspected. During the inspection, Plaintiff stated there were no seat belt buckles available and that he could not get a seat belt in the back of the van. Plaintiff requested to be moved to the front where there were seat belts. Ochoa responded, "you don't got shit coming, white boy. You wanna fuck around and steal shit on my watch? You're gonna see what happens." It was then that the officers asked Plaintiff his name and CDC number. Before he could respond, Ochoa slammed the door and walked away from the vehicle.

The route to the courthouse from the prison is approximately ten minutes. During this drive, Ochoa drove exceedingly fast and recklessly. He was navigating corners quickly and abruptly. Ochoa would press the accelerator so hard the tires would chirp. He would stop the vehicle abruptly at lights and stop signs. Ochoa further drove into pot holes purposely, which in turn made the van lurch violently. Ochoa would laugh while watching and pointing back at Plaintiff. Defendant Mares was watching Plaintiff through the rear view mirror. Plaintiff began to fear for his life and safety. There was nothing for Plaintiff to hold onto in the back.

As the van arrived at the courthouse, Plaintiff asked John Doe #2 if he thought Ochoa's driving was erratic, to which John Doe #2 responded, "hell yeah! Do they always drive like that?" Plaintiff said no and that he was going to be sure to get a seat belt. While they had been driving, Plaintiff had heard clunking and clinking sounds coming from a crate. When Ochoa came back to the van to lock away weapons, Plaintiff noticed the crate contained all of the missing seatbelt buckles from the vehicle. Plaintiff asked Ochoa why he was driving the way he did. Ochoa responded, "driving like what?" Plaintiff said, "you know, driving like…. all crazy like a….." Ochoa finished his statement: "like a bat out of hell?" Plaintiff said, "yeah exactly. You know I have no seat belt on back here." In response, Ochoa said, "[a]www, the big bad white boy is scared of a little speed?" He then laughed with Mares and gave Mares a high-five.

3

Plaintiff lost his temper and traded vulgarities with Ochoa. Plaintiff's last words were: "[f]uck how you feel about me or what I have done. It is the law."

When Plaintiff's court case was called, Plaintiff approached Defendant Sergeant Alvarez and asked for a seatbelt. Ochoa, in a shrill condescending voice, told Alvarez, "[y]eah Sarge, Bulkin doesn't like my driving and wants a seat belt." Ochoa then started laughing along with Mares and Alvarez.

Plaintiff was placed back in the rear of the van with no seat belts. John Doe #2 was returned from court and was again seat belted by Ochoa. Plaintiff and John Doe #2 engaged in conversation whereupon John Doe #2 asked Plaintiff why the officers were so hostile to him and would not provide him with a seatbelt. Ochoa then came back to retrieve his gun. Plaintiff again asked Ochoa for a seat belt since they were sitting in the nearby crate, or if he could be moved to a chair on the front where there were seat belts. Ochoa replied, "why Bulkin? Are you scared? Good, you should be, that will teach you a lesson. It's just a short drive back to the prison." Ochoa then shut the door and walked away.

During the drive back, Ochoa drove recklessly, slamming the brakes, driving into potholes, and accelerating quickly. Plaintiff alleges Ochoa drove through red lights to catch the other vans because he had fallen behind due to watching Plaintiff slip and slide in the rear of the van. Defendant Ochoa laughed and smiled while Plaintiff would slide about.

Defendant Ochoa then drove the van back to Ad-Seg where they dropped off John Doe #2. After dropping off John Doe #2, Defendant drove the van along the perimeter fence road. There were many ruts which caused the road to be bumpy. At one point the van suddenly lurched upwards and Plaintiff was thrown into the air and backwards and/or sideways about six feet. Plaintiff hit the floor hard and momentarily lost consciousness. Plaintiff's head was pounding and he felt sharp pains in his neck and back. He could not move or feel his legs. His body began to seize up and it hurt to move. Plaintiff feared something was broken and screamed for help.

The van stopped and Ochoa came and opened the door and started laughing at Plaintiff. He asked what was wrong. Plaintiff stated he was badly hurt. Ochoa laughed at him and said

he should have been wearing a seat belt. Plaintiff stated he could not feel his legs whereupon he was taken to the hospital on prison grounds.

At the hospital, Plaintiff was evaluated. It was determined that his neck and back were sprained and he had suffered a concussion. X-rays were inconclusive but no bones were broken. Plaintiff suffers from incontinence as a result of the injuries to his back. To this day Plaintiff experiences numbness and weakness in his right arm and right leg with progressive burning pain. Two MRIs were performed which revealed a bulging disc in his back.

## II.     SUMMARY OF ARGUMENTS PRESENTED IN MOTION FOR SUMMARY JUDGMENT

Defendants' motion for summary judgment argues that Plaintiff was injured once the van had returned to prison grounds and was driving on a dirt road, and not between prison and the courthouse. Defendant argues that Plaintiff's allegations of recklessness in his complaint concern the portion of the trip between the prison and the courthouse, and do not specifically allege reckless driving in the portion of the journey after arrival back at the prison. Defendants include the declaration of defendant V. Ochoa, the driver of the vehicle, which stated in relevant part:

> When driving across the unimproved dirt area and up the dirt slope toward the perimeter road, I was not driving the van in a reckless or dangerous manner; I certainly was not driving the van in such a way as to injure or harm Mr. Bulkin. Rather, I was driving the van slowly at a speed of approximately three to five miles per hour. The van was traveling at this same speed at the time the van reached the perimeter road. As the van reached the perimeter road and made its way from the dirt onto the roadway, due the uneven surface of the area where the dirt meets the asphalt, the van did rock back and forth slightly. It was at that time that I heard a thump from the rear of the van. I looked at the video monitor and observed Mr. Bulkin on the floor of the van. I stopped the van and Officer Mares and I immediately rendered assistance to Mr. Bulkin.

(ECF No. 47-3, p. 2). Defendants cite law, discussed below, that a failure to provide a seatbelt in and of itself constitutes only negligence, not deliberate indifference. Defendants acknowledge that some cases uphold an Eighth Amendment claim when coupled with evidence of reckless driving, indicating deliberate indifference rather than mere negligence. Defendants claim that because Plaintiff's evidence of reckless driving does not overlap with the moment in

the journey when Plaintiff was injured, there can be no constitutional violation as a matter of law. (ECF No. 47).

In opposition, Plaintiff claims that Defendants were in fact driving recklessly at the time of the injury. Plaintiff claims that "in the opinion of the plaintiff, [defendant] was traveling faster then [sic] five miles per hour as plaintiff felt the engine race and the van lurch forward." (ECF No. 64, p. 2). Plaintiff also contests the Ochoa declaration regarding speed on the ground that "Defendant can not say when Plaintiff was injured so how can defendant (Ochoa) say how fast the vehicle was moving?" (Id.). Plaintiff argues that Defendant Ochoa's reckless driving throughout the entire journey is relevant to his mindset when he deprived Plaintiff of a seatbelt. "The fact that Defendants willingly removed the seatbelts from the vehicle and refused to provide Plaintiff with one yet gave one to another similarly situated inmate speaks to mindset of Defendants." (Id.). Additionally, "traversing the uneven pavement and stepping on the gas knowing Plaintiff had no seatbelt shows malice and malicious thinking." (Id.). Plaintiff concludes that "Defendants [sic] refusal to give Plaintiff a seatbelt and then recklessly accelerating the vehicle up the slope caused Plaintiff to be harmed. . . . [T]he recklessness did not stop once they (Def) were back on prison grounds and Plaintiff was still denied a seatbelt. Those are material facts. . . . These actions specifically caused Plaintiffs [sic] injuries. As Plaintiff could not have been injured if he was provided a seatbelt, and Plaintiff could not have been injured if Defendant Ochoa was driving in a manner which is safe for the conditions." (Id. at pgs. 2-3).

In reply, Defendants object to Plaintiff's statements regarding Ochoa's recklessness at this time of the injury on the bases that (1) Plaintiff does not have a rational basis to guess the speed of the vehicle because he was not driving and could not see the speedometer and also because he stated at deposition he did not know the speed of the vehicle; and (2) "Plaintiff is not an expert able to provide an opinion based on specialized knowledge or expertise regarding the speed or manner in which a vehicle is driven sufficient to establish that the vehicle was being driven in a manner that was unsafe for the conditions." (ECF No. 65-2, pgs. 2-3).

\\\

### III.     LEGAL STANDARDS

### A.     Summary Judgment

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." Id. This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), cert. denied, 132 S.Ct. 1566 (2012).  The Court determines only whether there is a

genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### B. Deliberate Indifference to Risk of Harm in Violation of the Eighth Amendment

Prison officials have a duty under the Eighth Amendment to avoid an excessive risk to inmate safety. See, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state a claim under the Eighth Amendment based upon a defendant's failure to prevent injury, a plaintiff must allege that defendants were "deliberate[ly] indifferen[t]" to "conditions posing a substantial risk of serious harm." Id. Deliberate indifference is more than mere negligence, but less than purpose or knowledge. See id. at 836. A prison official acts with deliberate indifference only if he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837; accord Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002); Thomas v. Ponder, 611 F.3d 1144, 1152 (9th Cir. 2010) (citing Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009)) ("if an inmate presents evidence of very obvious and blatant circumstances indicating that the prison official knew [a substantial risk of serious harm] existed, then it is proper to infer that the official must have known of the risk.") (alteration in original).

The Ninth Circuit provided substantial guidance regarding the Eighth Amendment's prohibition against cruel and unusual punishment in the context of a deliberate indifference claim in the case of Jordan v. Gardner, 986 F.2d 1521 (9th Cir. 1993) (holding after rehearing *en banc* that prison policy requiring male guards to conduct random, nonemergency, suspicionless clothed body searches on female prisoners was cruel and unusual punishment in violation of Eighth Amendment):

> Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime require inquiry into [the prison officials'] state of mind. It is obduracy and wantonness ... that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause. Wantonness

> does not have a fixed meaning but must be determined with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged.
>
> In determining what constitutes "wantonness," the baseline mental state is deliberate indifference. Thus, where an inmate alleges that the conditions of confinement inflict unnecessary suffering upon him or her, to establish wantonness the inmate must show only that the prison officials were deliberately indifferent to the inmate's suffering. In contrast, when prison officials use force to maintain order, a greater showing is required; in that situation, wantonness turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. The reasons for this distinction are plain. Whether in the context of a prison-wide disturbance or an individual confrontation between an officer and prisoner, corrections officers often must act immediately and emphatically to defuse a potentially explosive situation. In such a situation, officers must make difficult judgments whether, and how much, force is appropriate. The officer rarely has time for reflection; instead, the decision to use force must be made in haste, under pressure, and frequently without the luxury of a second chance. Because the critique of such decisions in hindsight could chill effective action by prison officials, the Supreme Court has held that the higher standard is appropriate.
>
> We conclude that in this situation "wantonness" is determined by the deliberate indifference standard. Unlike judgment in the excessive force context, our task is not to critique in hindsight the exercise of judgment of a particular officer on a specific occasion.

Id. at 1527–28 (internal quotations and citations omitted) (alteration in original) (footnote omitted).

### C. Analysis of Defendant's Motion for Summary Judgment in Light of Allegations and Legal Standards

Defendants' motion for summary judgment argues that Defendants cannot be found to have violated the Eighth Amendment for depriving Plaintiff of a seatbelt unless Defendant can prove that Defendants were driving recklessly at the moment of injury. Relying on case law, not from the Ninth Circuit, stating that merely depriving an inmate of a seatbelt constitutes negligence, Defendants argue that even if Defendants did all that is claimed by Plaintiff—including deliberately singling out Plaintiff in depriving him of a seatbelt while securing other passengers, driving recklessly to and from the courthouse, laughing at Plaintiff after the injury and joking after Plaintiff's injury that he should have been wearing a seatbelt—at the moment

of impact, Defendant's failure to provide Plaintiff with a seatbelt would only constitute "negligence" rather than "deliberate indifference" under the law absent proof that Defendant drove recklessly at that moment.

In support of this legal argument, Defendants cite <u>Jabbar v. Fischer</u> 683 F.3d 54, 56 (2d Cir. 2012), which affirmed dismissal of a complaint where the prison bus did not have any seatbelts and the prisoner was hurt when he was thrown from his seat during a forceful turn. That Second Circuit held in that case that "the failure of prison officials to provide inmates with seatbelts does not, without more, violate the Eighth or Fourteenth Amendments." <u>Id.</u> at 58. The Second Circuit emphasized however that "Jabbar did not allege that there was any intent to punish or other improper motivation for the lack of inmate seatbelts on the Ulster hub bus, and we cannot reasonably infer such intent." <u>Id.</u> at 58-59.

Similarly, in <u>Spencer v. Knapheide Truck Equipment Co.,</u> 183 F.3d 902, 904 (8th Cir. 1999) the plaintiff had alleged that he was escorted in a police car that lacked any seatbelts. During the trip to the police station, he was thrown forward into the bulkhead of the compartment, causing serious injuries. <u>Id.</u> at 904. The Eighth Circuit upheld the grant of summary judgment against the plaintiff because the plaintiff could not establish deliberate indifference in light of the policy of the police department to purchase patrol wagons without safety restraints and to instruct officers to exercise caution in transportation. <u>Id.</u> at 906-07 ("Nor can we infer an intent to punish from the Board's decision not to install any other forms of safety devices or padding in the wagon, especially in light of the Board's guidelines cautioning officers to exercise care in the transport of such individuals and the paucity of complaints of serious harm occurring during such transport.").

Defendants also cite <u>King v. San Joaquin County Sheriff's Dept.</u> (E.D. Cal., Mar. 5, 2009, No. CIV S-04-1158GEBKJMP) 2009 WL 577609, at *1, <u>report and recommendation adopted</u> (E.D. Cal., Apr. 6, 2009, No. 2:04CV1158GEBKJMP) 2009 WL 959958, which recommended grant of summary judgment against a plaintiff where "he was injured when a San Joaquin County Sheriff's prisoner transport van not equipped with seatbelts hit a curb and then braked abruptly." The Court rested its decision again on a failure to allege deliberate

indifference.  Id. at *5.  ("[P]laintiff has not shown that the defendants were deliberately indifference as a result of ignoring law or policy, or otherwise demonstrated the failure to equip the van with seatbelts violated his constitutional rights.").  See also Carrasquillo v. City of New York, 324 F.Supp.2d 428 (S.D.N.Y. 2004), cited for the proposition that "failure to provide seatbelts to prisoners is not a constitutional violation under § 1983," where seatbelts were not provided as a matter of policy, and not on an individual basis.  Id. at 437.

Notably, the cases cited above all involve vehicles where seatbelts were not present, rather than a decision to single out the plaintiff to not receive an available seatbelt.  Defendants do cite to one case where the vehicle had seatbelts available.  Dexter v. Ford Motor Co. 92 Fed.Appx. 637, 638 (10th Cir. 2004).  In that case, the plaintiff had alleged that the prison had a policy that all inmates were to be seatbelted, but they could not do so themselves because they were shackled.  Other inmates had asked to be seatbelted, although the plaintiff had not asked for a seatbelt.  During transport, the driver's attention was diverted, the van rolled, and the plaintiff was injured.  Id. at 638.  In that unpublished case, the Tenth Circuit reversed the denial of qualified immunity against the officers because there were differing opinions about the safety of passengers lacking seatbelts, concluding "[i]n the context of this uneven statutory mosaic, and out of a sense of comity, we are loathe to say unbelted inmates are exposed to risks society chooses not to tolerate.  As praiseworthy as buckling up may be, we hold that failure to seatbelt an inmate does not violate the Constitution."  Id. at 643–44.

In contrast, as noted by defendants, numerous courts have upheld findings of deliberate indifference where the driver rejects requests for a seatbelt and also drives recklessly.  See, e.g., Brown v. Fortner (8th Cir. 2008) 518 F.3d 552, 560 (affirming denial of summary judgment against officer where "Fortner rejected Brown's request for a seatbelt.  Fortner drove recklessly and ignored requests by the inmate passengers in his van for him to slow down.  From this evidence, a reasonable jury could conclude that there was a substantial risk of harm to Brown and that Fortner knew of and disregarded the substantial risk harm.  As such, Brown has presented sufficient evidence that Fortner's actions may have violated the Eighth Amendment prohibition against cruel and unusual punishment."); Wilbert v. Quarterman, 647 F.Supp.2d

11

760, 769 (S.D. Tex. 2009) ("Considering the different circuit court opinions, it appears that an allegation of simply being transported without a seatbelt does not, in and of itself, give rise to a constitutional claim.  However, if the claim is combined with allegations that the driver was driving recklessly, this combination of factors *may* violate the Eighth Amendment."); Brown v. Saca, No. EDCV 09–01608–ODW, 2010 WL 2630891 (C.D. Cal. June 9, 2010) ("Plaintiff's allegations that Saca and Crispin refused to secure his seatbelt are sufficient to state a claim under the Eighth Amendment because he has alleged that Saca and Crispin acted recklessly."). Another recent example from this district is the case of Jamison v. YC Parmia Insurance Group, 2015 WL 8276333, at *3 (E.D. Cal., Dec. 9, 2015, No. 214CV1710GEBKJNP), which upheld a claim for deliberate indifference based on allegations that the plaintiff was shackled and put in a van without a seatbelt where the driver drove recklessly.

Here, Plaintiff has certainly alleged that Defendant Ochoa was driving recklessly throughout the journey.  Under the law cited above, Defendants' recklessness combined with failing to provide a seatbelt could lead to the inference that Defendants acted with deliberate indifference in failing to provide a seatbelt, rather than mere negligence.

Moreover, even under Defendants' interpretation of the law—that recklessness must happen at the moment of injury—this Court finds that there is a dispute of fact regarding whether Defendant Ochoa was driving recklessly at the instant of the accident.  Plaintiff alleges in opposition to summary judgment that defendant stepped on the gas as he traversed uneven pavement, thus "recklessly accelerating the vehicle up the slope." (ECF No. 64, p. 2).  The Court finds Defendant's objections to these allegations, based on the argument that Plaintiff is not an expert witness and testified at deposition he did not know the exact speed of the car, unavailable.  Plaintiff was a percipient witness and can testify that he observed the van accelerating unreasonably up a slope in a reckless manner.  Thus, this Court would recommend denial of the summary judgment on the basis of a dispute of fact regarding the drivers' recklessness at the time of the accident alone, even under Defendants' interpretation of the legal standard.

But, more fundamentally, the Court disagrees with Defendants' legal premise that Plaintiff must prove recklessness at the instant of the injury in order to prove that Defendants acted with deliberate indifference when they refused to provide Plaintiff with a seatbelt. The cases discussed above do not stand for such a proposition. Instead, the cases look at whether the drivers were driving recklessly in order to determine the defendants' state of mind in depriving inmates of a seatbelt. Reckless driving is merely one indication that a prison official was disregarding risks to an inmate at the time of transporting that inmate, and suggests that the official was also disregarding risks when it deprived an inmate of a seatbelt. In other words, the critical inquiry is defendants' state of mind in denying a seatbelt. Where there is no evidence of deliberate indifference to an inmate's safety other than failing to provide a seatbelt, especially when none is available, the cases find that Plaintiff cannot prove Defendants had an intent to disregard an Plaintiff's safety in not providing a seatbelt and can only establish that Defendants acted negligently. The critical question is always the state of mind of Defendants at the time of depriving an inmate of a seatbelt.

Examined with this framework in mind, Plaintiff has set forth ample disputed evidence regarding Defendants' intent in depriving Plaintiff of a seatbelt, even setting aside Defendants' recklessness at the moment of impact, including:

- It was the policy at the prison to require all passengers, including inmates, to wear seatbelts when on state business. Defendants thus acted contrary to prison policy when they deprived Plaintiff of a seatbelt.
- Defendant Ochoa provided seatbelts to other passenger inmates that day, and told those passengers "it's the law." Defendant Ochoa thus acted with deliberate intent in singling out Plaintiff to go without a seatbelt.
- When Plaintiff asked for a seatbelt, Defendant Ochoa responded "no, Bulkin, you lost that privilege," and later "you don't got shit coming white boy, you wanna fuck around and steal shit on my watch? You're gonna see what happens."

- Defendant Ochoa drove recklessly to the courthouse, while looking at Plaintiff in the rear view mirror and laughing.
- When Plaintiff complained about the speed, Defendant Ochoa said "awww, the big bad whiteboy is scared of a little speed?" and then proceeded to laugh with Defendant Mares and give him a high five.
- When Plaintiff requested a seatbelt on the way back to the prison, Defendant Ochoa stated "why Bulkin?  Are you scared?  Good, you should be, that will teach you a lesson."
- After Plaintiff's injury from being thrown from his seat without a seatbelt once back on the prison property, Defendant Ochoa laughed and said "[you] should have been wearing a seatbelt."

Defendants do not contest these facts in their motion for summary judgment (although they may very well contest them at trial).  Based on these facts, the Court recommends finding that there is a disputed question of fact regarding whether Defendants are liable for violation of the Eighth Amendment based on deliberate indifference to Plaintiff's safety.  As a matter of law, if Plaintiff can prove these factual allegations, a reasonable jury could find that Defendants acted with deliberate indifference to Plaintiff's safety when they refused to provide Plaintiff a seatbelt, and that Plaintiff was injured as a result.

## VI.  CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court finds disputed questions of fact that preclude summary judgment.  Accordingly, **IT IS HEREBY RECOMMENDED** that Defendants' motion for summary judgment, filed on April 21, 2015 (ECF No. 47), be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these findings and recommendations, any party may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that

failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 7, 2016**         /s/ *Erica P. Grosjean*
                                     UNITED STATES MAGISTRATE JUDGE